IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BRENT CLIFTON BARNARD, § | | |
| Plaintiff, § | | |
| § | | |
| v. § | A-23-CV-590-DII | |
| § | | |
| TRAVIS AKERS and OLIVIA § | | |
| ESPINOZA, § | | |
| Defendants. § | | |

**ORDER**

Before the Court are Brent Clifton Barnard's 42 U.S.C. § 1983 complaint and associated pleadings, and Defendants Olivia Espinoza and Travis Akers's Motions for Summary Judgment (ECF Nos. 46, 51). Barnard is proceeding pro se and in forma pauperis. Upon review of the parties' arguments and pleadings, the Court grants Defendants Espinoza and Akers's Motions for Summary Judgment.

**I. Procedural History**

Barnard filed his pro se federal complaint on May 24, 2023, naming Defendants Olivia Espinoza of the Burnet County Probation Office and Travis Akers of the Burnet County Sheriff's office, alleging they searched his residence without a warrant and then falsely arrested him. He raised claims of false arrest, false imprisonment, mental anguish, slander, and defamation. (ECF No. 1.) Upon Court order, Barnard thereafter filed a more definite statement. (ECF No. 8.) Defendants then filed separate motions to dismiss (ECF Nos. 26, 32); after reviewing the motions, the Court ordered Defendants to file amended motions as neither had addressed Barnard's claim that they searched his private property without a warrant (ECF No. 35). Defendants then filed supplemental motions to dismiss (ECF Nos. 36-37); the Court converted these motions to motions

1

for summary judgment and ordered Defendants to file additional summary judgment evidence and for Plaintiff to respond to the additional filings (ECF No. 40).

After the parties filed their additional pleadings, the Court dismissed Barnard's claims for false imprisonment and false arrest as *Heck*[1]-barred and dismissed his claims for slander and prejudice without prejudice. The Court then dismissed Defendants' motions for summary judgment on Barnard's unconstitutional-search claim without prejudice to the defendants refiling properly supported motions for summary judgment. (ECF No. 45.) Defendants Espinoza and Akers have since filed motions for summary judgment on the unconstitutional-search claim (ECF Nos. 46, 51), to which Barnard has not responded.

## II. Factual Background

The following is the summary judgment evidence before the Court.[2] Barnard alleges that, at approximately 3 p.m. on February 23, 2023, Defendant Akers arrived at the property,[3] accompanied by two City of Burnet police officers and two probation officers, one of whom was Defendant Espinoza. A group of officers knocked on Barnard's door and asked for a person named Arthur Six. Barnard said Arthur Six was not there and did not live at the property; he then asked the officers if they had a warrant to be on his property. After the officers did not respond to Barnard's question, he asked them to leave and went back into the house.

---

[1] *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).
[2] The majority of Barnard's pleadings do not constitute competent summary judgment evidence as they were not signed under penalty of perjury. *See Hernandez v. Velasquez*, 522 F.3d 556, 561 (5th Cir. 2008) (verified pleadings are competent evidence at summary judgment); *Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) (complaint signed with declaration of penalty under perjury that "foregoing is true and correct" was verified). However, based on Barnard's status as a pro se litigant, and his allegations of illiteracy, the Court has considered all of his pleadings in analyzing Defendants' summary judgment motions. *C.f., Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (holding pro se plaintiffs to "less stringent pleading standards than formal pleadings drafted by lawyers." (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).
[3] In one pleading, Barnard states that Lewis Ray Bostic owns the property in question. (ECF No. 21.) For ease of reading, the Court will refer to the property in question—1544 Buchanan Drive—as "the property."

At that point, a woman alerted Barnard that the officers had not left. Barnard went outside and saw officers coming out of his barn and shower house, and going into a tent on the property, all without Barnard's consent. Barnard ordered the officers to leave, to which he alleges Defendant Akers responded "I can do what I want" as he and the rest of the officers returned to their cars. Barnard put himself between the officers' cars and closed the gate to his property. Defendant Akers got out of his vehicle and told Barnard, "I will shoot you and run you over." Barnard then opened the gate and allowed the officers to leave the property.

Approximately ten minutes later, a different group of six Burnet County Sheriff's deputies showed up, along with the original officers, including Defendants Akers and Espinoza. After Barnard was informed of the officers' presence on his property, he exited his home and was met with a group of officers carrying AR-15 style rifles aimed at Barnard. Barnard asked the officers for a warrant, and one of the officers responded by stating "I don't have to show you nothing." Barnard dialed 911 from his cell phone; two of the officers grabbed him and slammed him down to the ground asking, "Where is your son?" The officers then handcuffed Barnard, and five other officers entered an external room located in the property's carport and apprehended Barnard's son, Brent Junior. The same officers then entered the main house without Barnard's consent and removed three people.

Defendant Espinoza attests she was not present at the property on February 23, 2023. Rather, that morning, she was at a court in Llano, Texas and had at a client meeting at 2 p.m. She states she has never supervised Barnard, Brent Junior, or Arthur Six and that, because she was breastfeeding her infant in February 2023, she intentionally reduced her site visits. (ECF No. 42-1.) Espinoza also submits a report created by Community Supervision Officer (CSO) Christina Meza. Meza reports she visited the property on February 23, 2023, along with CSO Richey and

Burnet Police Department (BPD) Officers Reyna and Levingston, and Defendant Akers. Upon arriving at the property, they made contact with an individual later identified as Brent Junior and asked him where Arthur Six was. Brent Junior said he was up at the top of the hill in the main house. The officers then made contact at the main house and Barnard was immediately defensive. He told the group that Arthur Six had left and then proceeded to yell and become very agitated. At this point, Akers spoke with Barnard because Barnard was asking for a supervisor. The group then returned to their vehicles when Barnard ran to the front gate and closed it, preventing the group from leaving. Akers got out of his car to resolve the situation; Meza and Richey remained in their vehicle. Once the group exited the property, Akers told them the Attorney General's office was looking at the house for Brent Junior. CSO Richey then identified the first person they made contact with as Brent Junior and they then left the property. (ECF No. 51-2.) As Espinoza points out, at no point in Meza's report is Espinoza identified as being present at the property.

Akers submits his Incident Report from February 23, 2023, along with his patrol video, and two affidavits: one from himself, and one from BPD Officer Rhett Levingston. (ECF Nos. 43-1, 43-2, 46-1, 48-2.) In his incident report, Akers states that at approximately 12:40 p.m. on February 23, 2023, he responded to an "agency assist" at the property where Adult Probation was attempting to contact a subject who missed his appointment. Upon arrival, Akers learned Barnard was yelling at the Probation and Police Officers, demanding their names and badge numbers. Akers gave Barnard his business card and learned that one of Barnard's sons was in the shed. Akers attests he "approached the small shed type building, similar to a tiny house, and attempted to make contact with Brent Barnard, Jr. I believe I knocked and called his name, as well as announcing myself. I received no response and was unable to contact or communicate with Brent

4

Barnard, Jr. At no point during this initial visit did [] I enter any building or other structure. I did not conduct a search of any shed and/or barn while on location." (ECF No. 46-1 at 3.)

Akers attests he learned later that day that the Office of the Attorney General would be executing a warrant for Brent Junior at the same property. Akers, along with other Burnet County deputies and BPD officers, assisted the Attorney General's agents. Akers was the first to arrive and parked near the shed where Officer Brown had seen Brent Junior. As Agents approached the main residence, Barnard came down from the shed and told the agents Brent Junior was not there. Barnard interfered with the agents' approach; an agent grabbed Barnard by the shirt and Barnard fell to the ground. Akers and another officer approached Barnard—who was complaining about a broken arm and having a stroke—and secured him in handcuffs. The Attorney General agents found Brent Junior in the shed and took him into custody. Akers attests that he remained behind the Attorney General's agents to provide security and cover and conducted no searches of any buildings or structures. Akers's patrol car video covers his second visit to the property and is consistent with his incident report. (ECF No. 43-2.)

BPD Officer Levingston attests that he was at the property with Akers during both visits. He testifies that, during the first visit, Akers attempted to contact Brent Junior, but "did not enter any of the structures located on the property nor did he or any other law enforcement officers conduct a search of any sheds, barns or other buildings." He further attests that he and Akers provided perimeter security during the second visit and that he "did not observe Deputy Akers entering and/or conducting any searches of the buildings located on the property, including any sheds or the barns." (ECF No. 48-2 at 3.)

Barnard has not responded to Defendants' most recent motions for summary judgment. His last filing with the Court was his response to Defendants' prior motions for summary judgment.

5

There, he he argues Espinoza and Akers are lying to the Court. He then restates his allegations that Espinoza and Akers arrived on the property looking for Arthur Six; he told them Six was not there and asked for a warrant, but they did not have a warrant. Espinoza said they were there because of all the drugs at the house. Barnard then says that, after he was alerted Defendants were still on the property, he walked outside to find them "shutting the door [to the shower house]. … I ask[ed] them what they were doing. Travis [Akers] said he could do what he wants." (ECF No. 44 at 3.) He then states Akers's bodycam was activated during the first visit, and the video from it would show Akers threatening to shoot and run over Barnard. (ECF No. 44.)

### III. Discussion and Analysis

1. Summary Judgment

A court will, on a motion for summary judgment, render judgment if the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). When a motion for summary judgment is made and supported, an adverse party may not rest upon mere allegations or denials but must set forth specific facts showing there is a genuine issue for trial. *Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 433 (5th Cir. 1995); FED. R. CIV. P. 56.

Both movants and non-movants bear burdens of proof in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense. *Id.* at 322. The moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. *Id.* at 323-24. At that point, the burden shifts to the non-moving party to "go beyond the pleadings and by [his] own affidavits, or by the

'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. The non-moving party cannot rely on general allegations but must produce "specific facts" showing a genuine issue for trial. *Tubacex v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).

In deciding whether to grant summary judgment, the Court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party. *See James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990). However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Luna v. Davis*, 59 F.4th 713, 715 (5th Cir. 2023) (quoting *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2023)). The Fifth Circuit has concluded "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the evidence before the court." *See James*, 909 F.2d at 837 (citing *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

2. Qualified Immunity

Both Espinoza and Akers assert their entitlement to qualified immunity. "A qualified immunity defense alters the usual summary judgment burden of proof." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). A government official performing a discretionary function is shielded from liability for civil damages so long as his actions do not violate a clearly established right of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Brown*, 623 F.3d at 253. The plaintiff must

therefore present evidence sufficient to create a genuine dispute of material fact as to whether (1) the official's conduct violated a constitutional right of the plaintiff, and (2) the constitutional right was clearly established so that a reasonable official in the defendant's situation would have understood that his conduct violated that right. *Id.*; *see also Pearson v. Callahan*, 555 U.S. 223, 232 (2009). For the right to be clearly established, the plaintiff must show that defendants had "fair warning that the alleged treatment of [Plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Nevertheless, when considering a qualified immunity defense, the Court still views the evidence in the light most favorable to the non-movant and draws all inferences in the non-movant's favor, *see Rosado v. Deters*, 5 F.3d 119, 122-23 (5th Cir. 1993), and cannot make credibility determinations or weigh the evidence, *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)

3. Fourth Amendment claim

The only issue before the Court is Barnard's claim that Espinoza and Akers violated his Fourth Amendment rights by searching the property without a warrant. The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend IV. The touchstone of the Fourth Amendment is reasonableness. *See United States v. Knights*, 534 U.S. 112, 118 (2001). "The reasonableness of a search is determined 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" *Id.* at 118-19 (quoting *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999)).

A government agent is generally required to obtain probable cause to conduct a search, which demands a "fair probability that contraband or evidence of a crime will be found in a

8

particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A search warrant embodies the probable cause requirements; as a result, warrantless searches conducted without consent "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnotes omitted). One of those exceptions is the warrantless search of probationers and parolees when they knowingly accept being searched as a condition of their probation and parole and the search is supported by the government's reasonable suspicion of criminal activity. *Knights*, 534 U.S. at 119-20, *Samson v. California*, 547 U.S. 843, 852 (2006).

Defendants do not argue that the searches were supported by either a warrant or Arthur Six's probation conditions or Brent Junior's parole conditions. Rather, both defendants argue that they did not violate Barnard's constitutional rights: Espinoza was not present at the property and Akers did not search the property.

    a. *Defendant Espinoza*

Espinoza argues she wasn't at the property on February 23, 2023, and therefore did not violate Barnard's constitutional rights. In support, Espinoza provides her personal affidavit as well as CSO Meza's report of her visit to the property on February 23, 2023. Espinoza argues that Meza's report describes two CSOs visiting the property that day and identifies those CSOs as herself and CSO Richey. Meza also identifies two BPD officers—including Officer Levingston—and Defendant Akers at the property but does not identify Espinoza as being there. According to Espinoza, this report—along with her affidavit—is dispositive evidence that she was not at the property on February 23, 2023, and therefore could not have violated Barnard's Fourth Amendment rights.

9

Barnard has not responded to this argument or CSO Meza's report. In response to Espinoza's prior summary judgment motion, Barnard argued she was lying in her pleadings because she was at the property on February 23, 2023. In dismissing Espinoza's prior summary judgment motion, the Court concluded Barnard's response was sufficient to create a fact issue regarding Espinoza's presence at the property. However, by providing a third-party's account of the initial search of the property on February 23, 2023, and with Barnard's failure to respond to this evidence, Espinoza has shown there is not a genuine issue of fact whether she was at the property. CSO Meza's report is also consistent with Barnard's more definite statement, where he describes five people on his property for the initial visit: two adult probation officers, two BPD officers, and Akers. (ECF No. 8 at 1.) Barnard does go on to say that the group included Espinoza, but again, there is no evidence outside his own allegations to support this claim.

The Court is mindful that Barnard is pro se and illiterate. Still, he has managed to litigate this case quite successfully to this point. Despite the summary judgment record showing that many people were on the property on February 23, 2023, only Barnard has identified Espinoza as being among them. Once a government official asserts their entitlement to qualified immunity, it is the plaintiff's burden to create a genuine issue of material fact over whether the official's conduct violated clearly established law. *Brown*, 623 F.3d at 253. Barnard has failed to rebut CSO Meza's report or explain why it does not identify Espinoza as present at the property. As a result, the Court concludes Barnard has not met his burden and that Defendant Espinoza is entitled to qualified immunity on his claim of an unconstitutional search.

    b. *Defendant Akers*

Barnard argues Defendant Akers unconstitutionally searched the property during both the first and second visits. Akers admits he was on the property for both visit but attests he did not

search any buildings during the first visit and that he only provided perimeter support for the Attorney General's agents during the second visit. Akers also provides an affidavit from Officer Levingston who further attests that Akers did not search the property on the first visit and only provided perimeter support during the second visit. Akers finally argues that the patrol video he submitted in support of his first summary judgment motion also shows that he remained on the perimeter of the property during the second visit and did not approach the house or any buildings.

As with Espinoza's new summary judgment evidence, Barnard has failed to rebut either Akers or Levingston's affidavits. Because Akers has asserted his entitlement to qualified immunity, it is Barnard's burden to create a genuine issue of material fact on whether Akers illegally searched the property. He has failed to do this. Accordingly, Akers is entitled to qualified immunity on Barnard's Fourth Amendment claim.

It is therefore **ORDERED** that Defendant Espinoza and Akers's Motions for Summary Judgment (ECF Nos. 46, 51) are **GRANTED**.

SIGNED this 30th day of August, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE